IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GERALD E. BROCKINGTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-163 (MTT) (CHW) |
| | : | |
| PAUL DUNCAN, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Before the Court are two Motions to Dismiss filed by the Defendants, Paul Duncan, Lillian Warren, Larry Jordan, and Robert Ratliff. (Docs. 11, 23). Because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motions be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**.

### BACKGROUND

In his complaint, Plaintiff claims that a fight broke out between two gangs at Baldwin State Prison on September 17, 2013. Although Plaintiff, a prisoner, claims not to have been involved in the fight, Plaintiff alleges that Defendant Ratliff, at Defendant Warren's direction, sprayed Plaintiff with a chemical agent. Plaintiff also alleges that Defendant Duncan hit Plaintiff with a riot stick and then again sprayed Plaintiff with a chemical agent, all while Plaintiff was "in a prone position . . . not resisting." (Doc. 1, p. 4). Thereafter, Plaintiff alleges that Defendant Duncan kicked and threatened Plaintiff with physical violence, took Plaintiff "out [of] the grass to [the] hot pavement to burn," and then sprayed Plaintiff with a chemical agent a third time at the direction of Defendants Jordan and Warren. Last, Plaintiff alleges that the Defendants let Plaintiff suffer for over an hour before affording him appropriate medical treatment.

1

## EXHAUSTION

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be

2

dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

## AVAILABLE ADMINISRTATIVE REMEDIEWS

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. (Doc. 11-3, pp. 7–8). At step one, a prisoner wishing to file a grievance was required to file no later than 10 calendar days from the date he knew or should have known of the facts underlying his grievance. (*Id.*). If this initial grievance was rejected, the prisoner was required to appeal within 7 calendar days. (Doc. 11-3, p. 12).

## ANALYSIS

Although Plaintiff's complaint presents a dispute of fact concerning his attempts to follow the grievance process, the evidence of record supports a finding that Plaintiff failed to exhaust available remedies. At step one of the *Turner* analysis, the allegations in the Complaint suggest that Plaintiff may have attempted to follow the grievance process. Plaintiff alleges that he filed a grievance in September that was "not turned in," (Doc. 17-1, p. 4). When accepted as true, this allegation indicates that the normal grievance procedure was not "available" to Plaintiff. The Court must therefore make specific findings of fact regarding Plaintiff's exhaustion of his administrative remedies.

At step two of the analysis, the Defendants have met their burden of showing that Plaintiff failed to exhaust. Defendants have produced the affidavit of Cherie Price, the Baldwin

State Prison Deputy Warden of Care and Treatment, which is supported by documents that include Plaintiff's grievance history and copies of two grievances filed by Plaintiff in October 2013. This evidence demonstrates that Plaintiff failed to exhaust his remedies.

Plaintiff's grievance history (Doc. 11-4) shows that Plaintiff filed a total of 23 grievances at the various institutions where he was housed. This history indicates that grievance number 158247 -- dated October 1, 2013, and related to "Conditions of Confinement" -- was rejected.[1] Defendants have submitted a copy of the "October 1" grievance, showing that it was dated September 25, 2013, but received on October 1, 2013. (Doc. 11-5). In the grievance, Plaintiff complains about a disciplinary report he received on September 25, related to the September 17 incident. He contends that he was not involved in the fight. He further contends that he was pepper-sprayed by Officer Duncan three times while he was in handcuffs and on the ground. Under "Resolution Requested," Plaintiff asks to have the disciplinary report dropped, to be "shipped back to Baldwin State Prison [and] taken off lock down," and to have Internal Affairs investigate the incident. The attached response from the Warden, dated October 4, 2013, shows that the grievance was rejected because "disciplinary reports are to be handled through the appeal process." (Doc. 11-5, p. 3). Other evidence in the record shows that the disciplinary report was dismissed on October 17, 2013, due to lack of evidence. (Doc. 11-8).

Defendants have also submitted a copy of a second grievance, number 161120, dated October 21, 2013. (Doc. 11-6). In this grievance, Plaintiff complains that a previous grievance, related to the September 17 incident, had "not been taken at the Counselor's level." The grievance goes into greater detail about the incident, alleging that Officer Duncan assaulted Plaintiff with a riot stick and with pepper spray, then "kicked and slammed and handled

---

[1] Plaintiff suggests that grievance 158247 is not the September grievance which Plaintiff claims was "not turned in." (Doc. 16, p. 1) ("the second grievance I filed on (10-1-13) . . . was rejected").

[Plaintiff] like a rag doll," all while Plaintiff was in restraints and face-down on the ground. (Doc. 11-6, p. 1). The grievance also complains that Plaintiff was denied medical assistance after the incident. The grievance was rejected on November 19, 2013, based on a standard operating procedure that allowed only one issue per grievance. (Doc. 11-6, p. 3). Deputy Warden Price, in her affidavit, contends that the October 21 grievance alleged three issues: a "use of force involving restraint, chemical weapons;" an assault "by an officer with a riot stick and chemical agent;" and denial of medical attention. Price Aff. ¶ 36. (Doc. 11-2).

There is no indication in the record that Plaintiff ever appealed either of the October grievances that arguably relate to the September 17 incident. Under the GDOC policy, Plaintiff had the opportunity to appeal the denials to the GDOC Central Office within seven days of receiving the denial. (Price Aff. ¶ 24). Plaintiff asserts that he "was not Advised of Appeal right," (Doc. 16, p. 1), but each rejection informed Plaintiff that he had "seven (7) calendar days within which to appeal." (Doc. 11-5, p. 3; Doc. 11-6, p. 4). The grievance process also provides a right to appeal from any grievance that is not processed. Price Aff. ¶ 35. Although Plaintiff suggests he filed an earlier grievance that was "not turned in," there is no indication that he ever attempted to appeal the failure to process this grievance.

Because Plaintiff did not take advantage of the opportunity to appeal the denials of his grievances, he did not fully exhaust his administrative remedies under the GDOC policy. "To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008)(quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). Because the Defendants have met their burden by demonstrating that Plaintiff did not properly appeal his grievances, it is Recommended that Plaintiff's complaint be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motions be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 3rd day of November, 2014.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge